Clerk, please call the next case. First case of the afternoon. 416-0407, Daryl Bagwell v. Workers' Compensation Commission. Counsel, you may proceed. May it please the court, my name is Steve Williams and I represent Reverend Daryl Bagwell in this case. This case primarily involves a question regarding average weekly wage and concurrent employment. We all know what the statute is, but the statute is that if an employee is working concurrently with two or more employers and the respondent has knowledge of such employment, then wages from all such employers shall be considered as from the liable employer. So in this case, it's our opinion that since the petitioner was working as a minister, his wages as a minister should be computed as if it was part of his average weekly wage for the liable employee. Now, the employer should have known, even if they didn't, that he was working for pay. He served as a pastor for 16 years. He worked at a church that had 100 to 150 members. He went to church every Wednesday night and he also worked from Sundays from 9 to 2. It seems strange to me that someone would put that much time in as a minister or a pastor and not be paid. Well, is there an assumption to fill in the gaps because, tell me if I missed something, it appears that when asked during direct examination whether the employers knew that he was being paid for his job as a minister, the claimant himself responded, no, they didn't know I was being paid. Judge, you're right. That's what he said. He did not know that he was being paid. But the Act doesn't make sure, doesn't force us to prove that. The Act only says that they have knowledge of such employment. And so in my view... Well, you started out by saying working for pay. I mean, what does employment mean? And how do we define it? It's not defined, is it? It's not defined, sir. I think employment means working for pay. That's the definition. In my opinion. And so I think since he was working for pay and they had knowledge that he was employed, that they should have to compensate him for it. Well, to get back to my original question, I mean, it's possible somebody could be a minister and could be volunteering. Is that not true? Sure. He would automatically be paid in every case. So if the case turns on whether or not the employer knows that he's being paid, is it the claimant's admission against interest? No, they didn't know I was being paid. Doesn't that matter at all here? Well, I think that it matters, but he still was being paid whether or not he told them that he was being paid. Yeah, but the obligation under 10 is triggered by their knowledge that he's employed and, as he pointed out, being paid. Well, he was being paid, though. The fact of the matter is, and the fact that he decided to keep that private, in my opinion, is irrelevant to the facts of the case. They were clearly aware that he was a minister. They had been to funerals. The HR manager had been to funerals, along with the company nurse where he was, where the Reverend was ministering over them. They were aware that he took Wednesdays off. Todd Wilhelmi and Norman Brower, both plant managers, knew that he worked as a minister. Andy Darling, another plant manager, knew that he worked as a minister. Marilyn, the company nurse, Jerry Hawley, all the people at the plant knew that he was a minister. Assuming that's all true, again, he worked as a minister. Isn't 10 triggered by being paid? Didn't the legislature intend that Section 10's concurrent wage requirement apply if the employee knew that the employee was being paid? Well, I think that they should have known that he was being paid by the amount of work that he was doing. There's no presumption, is there, in the statute that says if he's employed, they know that he's being paid? There's no presumption in the statute. But, you know, I think that then you're starting to raise a whole other issue of splitting hairs between, you know, if he was a church janitor. Sometimes church janitors are voluntary employees. You know, I think the fact of the matter is, the fact of the matter is the whole issue is because he was working for a church. If he wasn't working for a church, if he was working for another group, I'm not so sure that this issue would even be raised. I think the fact that he was working for a church and that it wasn't a large church is the reason why this decision was being made the way it was made. I have a question, kind of, because we're not involved at this level, but what purpose is comp insurance unless these are self-insured? Is Nestle self- insured? I believe Nestle is self-insured. Oh, they are? Okay. Well, I was thinking in terms of commercial comp insurance. They do, obviously, an inventory of employees and their wages, et cetera. I didn't know if they ask of their employees. Do they have other positions of paid employment? I don't know if that's... I don't know, Judge. I don't think they do, but I don't know that. Okay. One other, just out of ordinary question. This is Nestle's in Bloomington? Yes, sir. Is that the former Catherine Byke? Yes, it is. Oh, okay. I thought maybe it was. Now we're getting to the heart of the matter. I didn't realize it had been 27 years, apparently, since that company had gone out and been bought out by Nestle. Okay, well, thank you. Thank you. Thank you. May it please the court, I'm Sean Curry for Nestle Council. I actually don't have a lot to say because it sounds like you've read my brief just because... We always read the brief. Because realistically, you've sort of hit the nails, the couple of nails on the head here for everything that is really in dispute here. I was going to argue about why it shouldn't be the de novo standard, but counsel didn't make that argument again because I do think it's manifest way. I think this factual issue is what's in dispute. To clarify, the language of Section 10 actually talks about wages, unemployment. It talks about wages. They need to know about wages, not whether he did this or he didn't do it. And the one passage of his testimony that I was going to cite, you've already cited, Justice Hudson, where you said, look, his own testimony was none of their business, basically. You know, if throughout the course of the case, that answer was really short of how most of his answers were for all kinds of things that happened through the course of the case, it really was none of their business in his mind, and maybe it is none of their business. The problem with that is he doesn't really get to claim it then if he wants it to be none of their business. And like counsel said, if he said, you know, he doesn't know if keeping it private is relevant, of course it's relevant because if he keeps it private, they don't know. And that's the problem under the Act is they have to know about the wages. The only other thing that I will highlight for you before I sit back down is a lot of these issues he talks about, well, they should have known and they had all these other things and everything, but they didn't know it was a job. And some of his own evidence is this religious discrimination claim that he made. Look, Nestle has really good lawyers besides me as well who handle those things. If it was a second job, that's their defense to the religious discrimination claim is this isn't religious discrimination because we want him to work Wednesdays. We just don't want him to work his second job. They knew it was a second job where he was making wages. That's a defense. They gave him his accommodation based on a religious accommodation, not based on this is a second job. There was his chance to argue they knew way back then, but they didn't know because he kept it from them because he would have lost that claim. You don't get to hide something to win a claim before and then bring it out later and say now you should count this. I just don't think that would be fair to Nestle. I think this was a fair ruling and it clearly falls within the law. Section 10 clearly talks about wages and it's not against the manifest way. His own testimony is really what hurt his claim more than anything else. Part of the reason there's not a lot of people from Nestle testifying they didn't know is because they never really identified until the day of hearing who may have known and then I didn't need them for rebuttal anyways because he testified. None of their business. So I think this one was right and I don't think you'll have to spend a lot of time to figure that out, but it was a correct decision. Thank you. Thank you, counsel. I don't believe the court does. Thank you. Counsel, you may reply. If this was not a church, we wouldn't even be here on this case. They would have found that his average weekly wage was what we said it was and this would have ended back at arbitration. The fact of the matter is that he's a pastor and the fact that he's a pastor is what's raised the doubt and that's just not right. Thank you. Thank you, counsel, both for your arguments on this matter. It will be taken under advisement and written disposition shall issue. I failed to announce at the beginning of the call this afternoon, Justice Hoffman is not with us today. However, he is a full and participating member of this as well as you do of having the oral arguments. They are recorded and so Justice Hoffman will have the benefit of all your oral arguments today as well as the briefs and will be a full participating member of the decision on each and every one of your cases. Thank you, counsel.